Filed 5/21/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br>v.<br><br>JAVONTE EDDIE MATHIS,<br><br>　　　　Defendant and Appellant. | A168363<br><br>(Contra Costa County Super. Ct. No. 04001860212) |

　　　　After leading a high-speed car chase that resulted in the death of his cousin, Javonte Eddie Mathis pled guilty to voluntary manslaughter and other offenses and received a prison sentence of over 14 years.  Because his sentence included a one-year enhancement that was subsequently invalidated, the trial court recalled his sentence and reduced his prison term by one year pursuant to Penal Code section 1172.75.[1]  On appeal, Mathis argues that the court erred in failing to give him the benefit of various sentencing provisions that could have further reduced his prison term.  We affirm.

**BACKGROUND**

**A.**

　　　　The vehicle chase ensued when police attempted to pull Mathis's car over for a stop sign violation in late 2015.[2]  Mathis's

_____

[1] Undesignated statutory references are to the Penal Code. All references to "Rules" are to the California Rules of Court.

[2] The appellate record does not include direct evidence of the facts underlying Mathis's offenses.  Instead, the clerk's

1

16-year-old cousin, Torry Hines, was in the car with him. During the half-mile chase, Mathis "accelerated to a high rate of speed," reached a speed of 90 miles per hour and ran a red light before crashing into a utility pole and a fire hydrant. The vehicle caught fire, and Mathis fled the scene while Hines was still in the car. Hines died as a result of the fiery crash. A stolen handgun was later recovered from the scene, along with, according to the People, a shoe that had been stolen during a recent burglary. Mathis, who was 22, was on parole at the time of the crash.

In 2017 Mathis agreed to a negotiated disposition that resulted in his guilty pleas on four counts: voluntary manslaughter (Pen. Code, § 192, subd. (a)), fleeing the scene of an accident ("hit and run") resulting in death (Veh. Code, § 20001, subd. (b)(2)), second degree commercial burglary (Pen. Code, §§ 459, 460, subd. (b)), and possessing a firearm as a felon (Pen. Code, § 29800, subd. (a)(1)). In exchange for his guilty pleas, the prosecution dismissed charges of murder (Pen. Code, § 187) and fleeing a pursuing peace officer's vehicle causing death (Veh. Code, § 2800.3, subd. (b)).[3] Mathis acknowledged in his resentencing petition that he "stipulated to a specific sentence as part of [the] negotiated plea."

The trial court sentenced Mathis to an aggregate sentence of 14 years, four months in prison. The sentence included 11 years in prison for voluntary manslaughter, which was the upper

transcript includes summaries of the relevant facts, apparently obtained from police reports, recounted in Mathis's resentencing petition and the People's resentencing brief. Because the parties do not dispute the underlying facts, we rely on the facts as described in Mathis's opening brief except where otherwise specified.

[3] The murder charge was punishable by an indeterminate life sentence (Pen. Code, § 190), and the flight from a peace officer charge carried a maximum sentence of 10 years. (Veh. Code, § 2800.3, subd. (b).)

2

term[4], and one year in prison for the hit and run count.  Because Mathis had served a prior prison term, the sentence also included a one-year enhancement under section 667.5, former subdivision (b).

## B.

Mathis became eligible for resentencing based on a change in the law relating to prior prison term enhancements.  At the time he was sentenced, in 2017, section 667.5, former subdivision (b), mandated a one-year sentence enhancement for each true finding on an allegation the defendant had served a prior prison term within the preceding five years.  (*See* § 667.5, former subd. (b), as amended by Sen. Bill No. 1465 (2013-2014 Reg. Sess.), Stats. 2014, ch. 442, § 10, eff. Sept. 18, 2014; *People v. Burgess* (2022) 86 Cal.App.5th 375, 379-380.)  Effective January 1, 2020, the Legislature amended section 667.5, subdivision (b) to limit the enhancement to prior prison terms for sexually violent offenses.  (*See* Sen. Bill No. 136 (2019-2020 Reg. Sess.), Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020; *Burgess,* at pp. 379-380.)  The amendment applies to all defendants whose cases were not yet final at the time it took effect.  (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681-682.)

Subsequently, the Legislature amended the Penal Code to provide retroactive relief to defendants, like Mathis, whose convictions were already final when the amendment to section 667.5 took effect.  The Legislature invalidated prior prison term enhancements for non-sexually violent offenses that were imposed before January 1, 2020, under section 667.5, former subdivision (b).  (*See* § 1172.75, subd. (a), as enacted by Sen. Bill No. 483 (2021-2022 Reg. Sess.), Stats. 2021, ch. 728, §§ 1, 3, eff. Jan. 1, 2022; Renumbered from section 1171.1 by Assem. Bill No.

---

[4] "Voluntary manslaughter is punishable by imprisonment in the state prison for 3, 6, or 11 years."  (§ 193, subd. (a).)

200 (2021-2022 Reg. Sess.), Stats. 2022, ch. 58, § 12, eff. June 30, 2022.) Section 1172.75 requires resentencing for defendants who are serving terms that include an invalid prior prison term enhancement. (§ 1172.75, subds. (c), (d).)

Pursuant to section 1172.75, the resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement," unless the court concludes by clear and convincing evidence that imposition of a lesser sentence would threaten public safety. (§ 1172.75, subd. (d)(1).) Section 1172.75 also requires a heightened factfinding standard in specified circumstances. Section 1172.75, subdivision (d)(4), provides: "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." Further, in the course of resentencing, the court "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2); *see, e.g.*, Rules 4.410, 4.421, 4.423.)

## C.

Because Mathis's sentence included an invalid prior prison term enhancement, in 2023 the superior court recalled his sentence and resentenced him pursuant to section 1172.75.[5]

---

[5] We grant Mathis's unopposed request for judicial notice that, in compliance with section 1172.75, subdivision (b), the California Department of Corrections and Rehabilitation listed him as potentially eligible for resentencing in a document entitled "Inmates with a Penal Code Section 667.5(b) prior to

Mathis argued that, in resentencing him, the court should reduce his sentence in several respects, based in part on various changes in law that took effect in January 2022. The trial court struck the one-year prior prison term enhancement but otherwise "le[ft] the remainder of the sentence untouched," resulting in a total sentence of 13 years and four months in prison.

## DISCUSSION

We review the trial court's sentencing decision for abuse of discretion and will not set it aside unless it is so irrational or arbitrary that no reasonable person could reach the same result. (*See People v. Carmony* (2004) 33 Cal.4th 367, 376-377 (*Carmony*).) Where Mathis raises questions of law, our review is de novo. (*See People v. Superior Court (Frezier)* (2020) 54 Cal.App.5th 652, 659.)

### A.

Mathis contends that, under section 654, the trial court should have stayed the punishment on his conviction for a hit and run causing death. We disagree.

### 1.

At the time Mathis was sentenced, section 654 provided that when "[a]n act or omission . . . is punishable in different ways by different provisions of law," the defendant "shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, former subd. (a), as amended by Sen. Bill No. 914 (1997-1998 Reg. Sess.), Stats. 1997, ch. 410, § 1, eff. Sept. 15, 1997.) Effective January 1, 2022, the Legislature eliminated the requirement to impose the longest sentence. (*See* § 654, subd. (a),

01JAN2020 and/or Health & Safety Code Section 11370.2 prior to 01JAN2018." (*See* Evid. Code, § 452, subd. (d).)

5

as amended by Assem. Bill No. 518 (2021-2022 Reg. Sess.), Stats. 2021, ch. 441, § 1, eff. Jan. 1, 2022; *see also People v. Mani* (2022) 74 Cal.App.5th 343, 379-380.) Section 654, subdivision (a), now provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under *either* of such provisions, but in no case shall the act or omission be punished under more than one provision." (Italics added.)

Under section 654, a defendant may not receive more than one punishment for a single act, nor may a defendant receive multiple punishments for acts that comprised a single, indivisible course of conduct in service of a single objective. (*People v. Perez* (1979) 23 Cal.3d 545, 550-552; *see also People v. Correa* (2012) 54 Cal.4th 331, 336.) To avoid double punishment, a sentencing court applying section 654 will impose the sentence for one offense while staying the imposition of the sentence on the other offense. (*See People v. Caparaz* (2022) 80 Cal.App.5th 669, 689.)

**2.**

Mathis contends that the trial court should have stayed the one-year prison term for his hit and run conviction because it arose out of the same course of conduct as his voluntary manslaughter conviction. Citing *People v. Hester* (2000) 22 Cal.4th 290 (*Hester*), the trial court concluded that Mathis waived his section 654 claim when he agreed to a specified term of imprisonment as part of a negotiated disposition without raising any section 654 claim at the time he entered his plea.

In *Hester*, the defendant argued on direct appeal, after no contest pleas, that his sentence violated section 654's prohibition on double punishment. (*Hester*, *supra*, 22 Cal.4th at pp. 293-294.) In rejecting the defendant's position, *Hester* relied upon former Rule 412(b) (renumbered Rule 4.412 and amended, eff. Jan. 1, 2001), which provided that, where a defendant has agreed to a specified prison term and is sentenced to a term no longer than the agreed-upon term, the defendant " 'abandons any claim

6

that a component of the sentence violates section 654's prohibition of double punishment, unless that claim is asserted at the time the agreement is recited on the record.' " (*Hester*, at pp. 293, 294; *see also* Rule 4.412(b).) Thus, "[w]here the defendants have pleaded guilty in return for a *specified* sentence," the appellate court will not find section 654 error. (*Hester*, at p. 295.) As our Supreme Court explained, "[t]he rationale behind this policy is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process." (*Ibid*.)

Mathis tries to distinguish *Hester* because it involved a direct appeal rather than an appeal from resentencing. He relies on *People v. Arias* (2020) 52 Cal.App.5th 213 (*Arias*). In *Arias*, the defendant was resentenced pursuant to section 1170, subdivision (d)(1), and he unsuccessfully raised a section 654 claim at resentencing. (*Arias,* at p. 217.) In determining whether the defendant's section 654 claim was cognizable on appeal, *Arias* held that Rule 4.412(b) did not bar the defendant from raising a section 654 claim on appeal from the resentencing proceeding, even though he had stipulated to a sentence as part of his original plea agreement. (*Arias*, at p. 219.) *Arias* reasoned that the recall of the defendant's sentence under section 1170, subdivision (d)(1), "effectively vacated his original sentence." (*Arias,* at p. 219.) "In its place, a new sentence was imposed under section 1170, subdivision (d)(1)," *Arias* explained, "not under an " 'agree[ment] to a specified term [of years] in prison.' " (*Arias*, at p. 219, quoting Rule 4.412(b).) As a result, *Arias* concluded that *Hester* was "inapplicable." (*Arias,* at p. 218.)

We are unpersuaded. The defendant in *Arias* was resentenced under section 1170, subdivision (d), a provision requiring resentencing of certain youthful offenders that specifies that the trial court shall "resentence the defendant in the same

7

manner as if the defendant had not previously been sentenced." (§ 1170, subd. (d)(5).)  In contrast, Mathis's resentencing was based on section 1172.75, which uses less expansive language, providing only that the court shall "resentence the defendant." (§ 1172.75, subd. (c).)  (*See People v. Terwilligar* (2025) 109 Cal.App.5th 585, 601 (*Terwilligar*) [observing that "we do not believe that [section 1172.75] requires the resentencing court to proceed as if it were 'writing on a blank slate' "].)  When resentencing a person under section 1172.75, the trial court may elect to retain aspects of the original sentence (as the trial court did here).  (*See Terwilligar,* at p. 601)

Accordingly, *Hester* controls here.  Rule 4.412(b) squarely applies.  Mathis does not dispute that he agreed to a specified term, that he was sentenced to that term or a shorter one, or that he failed to assert a section 654 claim at the time he entered his plea.  (*See* Rule 4.412(b).)

Mathis next argues that any waiver of his section 654 claim is irrelevant because section 1172.75, subdivision (d)(2), mandates that the resentencing court apply "changes in law that reduce sentences or provide for judicial discretion," and section 654 was amended after he entered his plea.  Section 654, former subdivision (a), mandated the imposition of the longest term of imprisonment where a criminal act can be punished in multiple ways (§ 654, former subd. (a), as amended by Sen. Bill No. 914 (1997-1998 Reg. Sess.), Stats. 1997, ch. 410, § 1, eff. Sept. 15, 1997), whereas the trial court now has discretion to select a shorter applicable punishment (§ 654, subd. (a), as amended by Assem. Bill No. 518 (2021-2022 Reg. Sess.), Stats. 2021, ch. 441, § 1, eff. Jan. 1, 2022).  However, Mathis is asking that the *shorter*, one-year term be stayed, not the longer term.  In any event, the part of the statute upon which he does rely—the prohibition against double punishment—remains unchanged.

**B.**

Mathis challenges the trial court's decision not to impose the lower term for voluntary manslaughter based on several aggravating factors. We find no abuse of discretion.

Effective January 1, 2022, the Legislature amended section 1170, subdivision (b)(6)(B), to establish a presumption that, in cases in which the defendant was a youth at the time of the offense, the court "shall" impose the lower term "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6); *see* Senate Bill No. 567 (2021–2022 Reg. Sess.), Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.) Here, the trial court acknowledged that section 1170, subdivision (b)(6)(B) applies because Mathis was a youth at the time of the offense, but the court held that the aggravating factors outweighed the mitigating circumstances.

First, the trial court concluded that Mathis had shown a conscious disregard for life (*see* Rule 4.421(c)), reasoning that Mathis "traveled through the intersection . . . against a red light signal at a speed of 70 miles per hour," which was "quite likely at least twice the posted speed limit, if not more" and resulted in "quite a dangerous situation." Second, the court found that "[t]he age of the victim," who was 16 when he died, made him particularly vulnerable (*see* Rule 4.421(a)(3)), and that in committing the offense, Mathis had taken advantage of his "relationship with [the victim] as a close relative" (Rule 4.421(a)(11)). Third, the trial court noted, as an aggravating factor, that Mathis was on parole at the time of the offense. (Rule 4.421(b)(4).)

Mathis concedes that he was on parole at the time, but he nonetheless argues that the remaining considerations relied upon by the trial court do not justify imposition of the upper term. He does not dispute, however, that subsequent tire track analysis

9

indicated he was driving at around 90 miles per hour during the chase or that he fled the scene while his teenaged cousin died in the burning car. The trial court carefully considered Mathis's arguments, addressed the relevant factors, and arrived at a conclusion that was neither arbitrary nor irrational. (*See Carmony*, *supra*, 33 Cal.4th at pp. 376-377.) Where, as here, the sentencing court balanced the relevant circumstances and reached a neutral decision consistent with the law, we must affirm even if we might have arrived at a different determination in the first instance. (*Id.* at p. 378.)

## C.

Mathis contends that the trial court violated section 1170, subdivision (b)(2), by selecting an upper term sentence based on aggravating factors that had neither been found true beyond a reasonable doubt by a judge or jury nor been admitted by him. We discern no error.

## 1.

Our Supreme Court recently reviewed the history of the relevant legislation. (*See People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*).) Until 2007, section 1170, former subdivision (b), provided that, when a penal statute specifies three possible prison terms, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (*See* § 1170, former subd. (b); Stats. 1977, ch. 165, § 15; Stats. 1998, ch. 926, § 1.5; *see also Lynch*, at p. 746.)

In 2007, however, the United States Supreme Court held that California's upper term sentencing scheme violated the Sixth Amendment right to a jury trial because it allowed a defendant's prison sentence to be increased beyond the statutory maximum based on facts that had not been found true beyond a reasonable doubt by a jury or admitted by the defendant. (*See Cunningham v. California* (2007) 549 U.S. 270, 274-275

10

(*Cunningham*); *see also Lynch*, *supra*, 16 Cal.5th at pp. 746-747.) The statutory maximum, for Sixth Amendment purposes, is the maximum sentence the court may impose without finding any additional facts beyond those necessary to support the verdict. (*Lynch*, at p. 747.) *Cunningham* explained that, except for prior conviction allegations, the Sixth Amendment requires "any fact that exposes a defendant to a greater potential sentence" to be found by a jury beyond a reasonable doubt. (*See Cunningham*, at p. 281.) *Cunningham* noted that California could comply with the Sixth Amendment either by requiring jury findings for any facts necessary to impose an aggravated sentence, or by authorizing sentencing courts " 'to exercise broad discretion . . . within a statutory range.' " (*See Cunningham*, at p. 294; *Lynch*, at p. 747.)

That same year, our Legislature chose *Cunningham'*s second option. (*Lynch*, *supra*, 16 Cal.5th at p. 748.) The Legislature amended section 1170, subdivision (b), to grant trial courts "broad discretion" to choose between the lower, middle, and upper terms. (*See* § 1170, former subd. (b), enacted by Sen. Bill No. 40 (2007-2008 Reg. Sess.), Stats. 2007, ch. 3, § 2, eff. Mar. 30, 2007; *Lynch*, at pp. 747-748.) That sentencing scheme, in effect when Mathis was originally sentenced, was one that " 'everyone agrees' " raised no Sixth Amendment concerns. (*Lynch*, at p. 747.)

Subsequently, our Legislature revisited the question and amended section 1170, subdivision (b), to adopt the first option *Cunningham* outlined. (*Lynch*, *supra*, 16 Cal.5th at p. 748.) Effective January 1, 2022, section 1170, subdivision (b), now states that, when a "statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term" unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts

11

underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subds. (b)(1)-(2); *see* Senate Bill No. 567 (2021–2022 Reg. Sess.), Stats. 2021, ch. 731, § 1.3, eff. Jan. 1, 2022.)

In the same session, our Legislature also established the resentencing procedures for defendants like Mathis who were serving terms that included a prior prison term enhancement. (*See* § 1172.75, subd. (a), as enacted by Sen. Bill No. 483 (2021-2022 Reg. Sess.), Stats. 2021, ch. 728, §§ 1, 3, eff. Jan. 1, 2022; Renumbered from section 1171.1 by Assem. Bill No. 200 (2021-2022 Reg. Sess.), Stats. 2022, ch. 58, § 12, eff. June 30, 2022.)

**2.**

Mathis is incorrect that the heightened factfinding requirement applies here.

Section 1172.75, subdivision (d)(4), provides that, before any aggravating facts may be used to justify the imposition of an upper term sentence, the defendant must have admitted them or they must have been found true beyond a reasonable doubt by a judge or jury, "*[u]nless the court originally imposed the upper term*." (Italics added.) Based on this "unambiguous" language, *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455, 466-467 (*Brannon-Thompson*), held that the heightened factfinding requirement does not apply where the defendant originally received an upper term sentence.

But Mathis argues that the italicized language above creates an ambiguity in the statutory scheme, rather than an exception to the factfinding requirement. Specifically, section 1172.75, subdivision (d)(2), mandates that, during the resentencing proceeding, "[t]he court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion." And the

12

heightened fact-finding requirement of section 1170, subdivision (b)(2), Mathis says, is one of the "changes in law" that must be applied. According to Mathis, *Brannon-Thompson*'s construction of section 1172.75, subdivision (d)(4), conflicts with the duty to apply changes in law in subdivision (d)(2) of the same statute, making the statute ambiguous.

Further, citing *Lynch*, Mathis contends that section 1172.75, subdivision (d)(4), would violate the Sixth Amendment unless it were interpreted to make the heightened factfinding requirement applicable to cases in which the defendant was originally sentenced to the upper term. Mathis draws support from *People v. Gonzalez* (2024) 107 Cal.App.5th 312, 327-330 (*Gonzalez*), which rejected *Brannon-Thompson*'s construction of section 1172.75, subdivision (d)(4). (*See Gonzalez*, at p. 330.)

*Gonzalez* held that interpreting section 1172.75, subdivision (d)(4), to except defendants originally sentenced to upper terms from the heightened factfinding requirement would potentially violate the Sixth Amendment by allowing for the imposition of a sentence based on facts not found by a jury. (*Gonzalez*, *supra*, 107 Cal.App.5th at pp. 329-330.) In so holding, the court relied in part on *Lynch*'s point that, "[u]nder the current statute [section 1170, subdivision (b),] the middle term is the maximum term that can be imposed unless additional factual determinations are made. It is the requirement of additional factfinding that brings the Sixth Amendment into play." (*Lynch*, *supra*, 16 Cal.5th at p. 759; *see Gonzalez*, at p. 330.) In light of these constitutional concerns, *Gonzalez* construed section 1172.75, subdivision (d)(4), to "*restrict the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a condition or exception independently justifying the imposition of the upper term." (*Gonzalez*, at p. 329.) According to *Gonzalez*, "a defendant would be eligible for the upper term but could not

13

receive it" unless the heightened factfinding requirement is met. (*Ibid*.) *Gonzalez* distinguished *Brannon-Thompson* because it did not grapple with Sixth Amendment concerns. (*See Gonzalez*, at p. 330; *Brannon-Thompson, supra,* 104 Cal.App.5th at p. 467 [declining to address the defendant's constitutional argument due to forfeiture].)[6]

We disagree that the Sixth Amendment is implicated here. When Mathis was sentenced, in 2017, his sentence was imposed pursuant to the version of section 1170, subdivision (b), that granted the trial court broad discretion to select any of the three applicable prison terms. As *Lynch* explained, under that sentencing scheme, there was no requirement for the judge to find a particular fact to justify imposition of the upper term. (*See Lynch, supra,* 16 Cal.5th at p. 747.) As a result, the court's selection of an upper term at Mathis's 2017 sentencing did not run afoul of the Sixth Amendment. (*See Lynch*, at pp. 747-748; *Cunningham, supra*, 549 U.S. at p. 294.)

The same statutory scheme under which Mathis was sentenced had long been in effect at the time that the Legislature established the resentencing procedures applicable here. As a result, it was not necessary for the Legislature to impose the heightened factfinding requirements for defendants like Mathis who originally received upper term sentences under the prior version of section 1170, subdivision (b). That sentencing scheme fully complied with the Sixth Amendment. As discussed, the

---

[6] Our Supreme Court recently granted a petition for review that presents the question over which *Brannon-Thompson* and *Gonzalez* split: whether section 1172.75, subdivision (d)(4), allows a trial court to reimpose an upper term sentence where the facts underlying one or more aggravating circumstances were neither stipulated to by the defendant nor found true beyond a reasonable doubt by the factfinder. (*See People v. Eaton* (Mar. 14, 2025, C096853) [nonpub. opn.]*,* review granted May 14, 2025, S289903.)

prior scheme authorized the imposition of upper term sentences without any additional fact-finding.[7] But for defendants who did not receive an upper term in their original sentencing, to ensure that any newly imposed upper term sentence is consistent with the Sixth Amendment, the Legislature mandated that any such aggravating fact be found pursuant to the heightened factfinding requirements specified in *Cunningham*. (*See* § 1172.75, subd. (d)(4).)

We therefore reject Mathis's contention that the exception in section 1172.75, subdivision (d)(4), for cases in which the trial "court originally imposed the upper term" must be construed, as a matter of constitutional avoidance, to nonetheless require aggravating factors to be found by the factfinder or admitted by the defendant. Where, as here, the trial court elects to retain an upper term sentence that complied with the Sixth Amendment when originally imposed, the court need not engage in any additional factfinding under section 1172.75, subdivision (d)(4). (*See Brannon-Thompson*, *supra*, 104 Cal.App.5th at pp. 466-467.)

Further, contrary to Mathis's argument, section 1172.75 is not ambiguous because more specific legislative enactments control over general ones. (*See City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 68-69.) And here, section 1172.75, subdivision (d)(2), addresses the general topic of changes in law, whereas subdivision (d)(4) of that statute more specifically deals with the new factfinding requirement, making clear that it does *not* apply where "the court originally imposed the upper term." (*See Brannon-Thompson*, *supra*, 104 Cal.App.5th at p. 467 ["Section 1172.75, subdivision (d)(4) is . . . an exception to the general rule that the trial court must apply

---

[7] We are not presented with, and we therefore do not consider, the circumstance of a defendant who was sentenced under the version of section 1170, subdivision (b), determined to be constitutionally invalid in *Cunningham*.

ameliorative changes in the law at a section 1172.75 resentencing."].)

To be sure, absent language to the contrary in section 1172.75, section 1170, subdivision (b)'s amended sentencing scheme would apply to Mathis's resentencing because we presume that the Legislature intends ameliorative changes in sentencing law to apply in all cases that are nonfinal, including cases which became nonfinal due to resentencing. (*See People v. Padilla* (2022) 13 Cal.5th 152, 162-163 (*Padilla*).) But the Legislature is also free to "write statutes that provide for a different or more limited form of retroactivity, or for no retroactivity at all," and it may "disclaim the application of a new ameliorative law to proceedings that occur after a defendant's conviction or sentence has been vacated." (*Id.*, at p. 162; *see also Terwilligar*, *supra*, 109 Cal.App.5th at p. 602.) Section 1172.75, subdivision (d)(4), does exactly that. It expresses the Legislature's intent that the new, heightened factfinding requirements for aggravating factors do not apply where the defendant was originally, lawfully sentenced to an upper term. (*See Brannon-Thompson*, *supra,* 104 Cal.App.5th at pp. 466-467.) During Mathis's resentencing proceeding, the trial court permissibly elected to retain the upper term sentence previously imposed under a sentencing scheme that was fully consistent with his Sixth Amendment right to a jury trial. (*Cf. Terwilligar*, at p. 602 [explaining that "section 1172.75 allows for the possibility that a sentence of the original length will be reimposed"].)

## D.

Finally, we reject Mathis's argument that the trial court mistakenly believed that it could not reduce his sentence based on ameliorative changes in law without giving the prosecution the opportunity to rescind the plea agreement.

16

Mathis mischaracterizes the trial court's decision. Although the court expressed some concern that allowing a reduction in his sentence might be unfair to the prosecution, ultimately the trial court carefully considered each of his arguments for reducing his sentence, and it resentenced him based on the applicable changes in the sentencing rules. The trial court explained that the court must "look at the picture now and see what would be an appropriate sentence in light of what we know and what the legislature has instructed." The trial court struck Mathis's prior prison term enhancement in compliance with section 1172.75. Moreover, as the balance of our opinion reflects, the court applied section 1170, subdivision (b)(6)(B), which concerns youthful offenders like Mathis, and the court was not obligated to apply the heightened factfinding requirement in section 1170, subdivision (b)(2). We therefore reject Mathis's argument that his sentence rested on the trial court's misunderstanding of its own resentencing authority.

## DISPOSITION

The judgment is affirmed.

17

BURNS, J.

WE CONCUR:

SIMONS, ACTING P.J.
CHOU, J.

*People v. Mathis (A168363)*

Superior Court of Contra Costa County, No. 04001860212, The Hon. Julia Campins, Judge

Walter K. Pyle, under appointment by the First District Appellate Project, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, and Katie L. Stowe and Brady Baldwin, Deputy Attorneys General, for Plaintiff and Respondent.